JOHN R. O'GORMAN
   Texas Bar No. 24121292; jogorman@ftc.gov
LUIS GALLEGOS
   Oklahoma Bar No. 19098; lgallegos@ftc.gov
REID TEPFER
   Texas Bar No. 24079444; rtepfer@ftc.gov

Federal Trade Commission
1999 Bryan St., Suite 2150
Dallas, TX 75201
Phone: (202) 758-7704 (O'Gorman)
Fax: (214) 953-3079

*Attorneys for Federal Trade Commission*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>     Plaintiff,<br><br>     v.<br><br>SUPERIOR SERVICING LLC, a limited liability company; and<br><br>DENNISE MERDJANIAN, aka Dennise Correa, individually and as managing member of SUPERIOR SERVICING LLC,<br><br>     Defendants. | Case No. 2:24-cv-02163-GMN-MDC<br><br><br>**PLAINTIFF FTC'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION** |

## I.     INTRODUCTION

As detailed in Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion"), Defendants Superior Servicing LLC ("Superior Servicing") and Dennise Merdjanian employed a predatory student loan debt relief scheme to gouge consumers for more than $10 million in upfront and recurring payments. To stop this outrageous conduct, this Court

1    issued a TRO barring further deceptive conduct and, among other things, appointed a Receiver

2    and permitted immediate access to Defendants' business premises.

3         The evidence found at those premises confirms the alleged violations of deceptive and

4    illegal sales tactics.; This evidence also shows that Individual Defendant Merdjanian and her

5    business associates perpetuated their illegal scheme through the use of multiple shell companies

6    and taken efforts to keep consumers from cancelling recurring payments.

7         To ensure that Defendants stop defrauding consumers, Plaintiff asks the Court to enter

8    the proposed Preliminary Injunction banning them from further marketing their deceptive student

9    debt relief services. Their continued efforts to evade accountability by operating through

10   multiple entities and their culture of deceit show they should not be allowed to keep scamming

11   consumers. We also request an extension of the asset freeze, receivership, immediate access, and

12   expedited discovery provisions.

13   **II.    PROCEDURAL HISTORY**

14        The FTC filed its Complaint and Motion on November 18, 2024. As detailed in the

15   Motion, Defendants marketed their deceptive student debt relief services through a variety of

16   misrepresentations, including that:

17        1. consumers who purchase Defendants' services will have their monthly loan

18           payment amounts reduced;

19        2. consumers who purchase the services will receive loan forgiveness;

20        3. consumers' monthly payments to Defendants will be applied towards consumers'

21           student loans;

22        4. Defendants are affiliated with the U.S. Department of Education or its approved

23           loan servicers; and

24

5. Defendants will assume responsibility for servicing the repayment of consumers' loans.

Based on the FTC's pleadings, this Court entered a Temporary Restraining Order ("TRO") (Doc. 9) on Friday, November 22. The FTC served summonses, the initial filings, and the TRO on both Defendants through process servers on November 25. (Docs. 12, 13) However, the FTC has not been contacted by Defendants or counsel on their behalf.

The TRO prohibited further illegal conduct, froze Defendants' assets, permitted expedited discovery, appointed a Receiver, and gave Plaintiffs and the Receiver immediate access to the Defendants' business premises. The Receiver accessed the premises on Monday, November 25.

Since the immediate access, the FTC has been reviewing documents and data copied from Defendants' offices. The evidence further supports the alleged violations and illustrates the Defendants' pattern of continuing their conduct under different entity names.

## III.    ADDITIONAL EVIDENCE OF DEFENDANTS' CONTINUED DECEPTION

Plaintiff has identified additional evidence of Defendants' illegal conduct since the TRO was entered. When the Receiver entered Defendants' business premises, she discovered that employees at those premises were operating under the names Student Processing Center and SPCTwo. Although now using different names, documents found at employee works stations show that they continue to use the Superior Servicing sales script and work directly under Defendant Merdjanian.[1] These documents also show that Defendants use alternate entity names

---

[1] Banking records also show that SPCTwo received substantial funds from Superior Servicing. (Decl. of K. Slaughter, Doc. 3-9 at APP 477, ¶ 35)

to evade accountability by creating new corporate entities to continue the same enterprise. (Decl. of K. Freitag, Att. B; Decl. of K. Slaughter, Doc. 3-9 at APP 478-79 ¶41-43)

### A.    Defendants' Predatory Sales Scripts

Sales scripts bearing the Superior Servicing name and logo found at workstations across the office reflect that Defendants specifically directed their employees to employ the deceptive representations and tactics alleged in the FTC's complaint. For example, Defendants imply an affiliation with the Department of Education as a trick to gain access to consumers' Federal Student Aid accounts. Following the script, representatives state that they are initiating communications to consumers from the Federal Student Aid website: "I am going to send you a 6-digit verification code from the Federal Student Aid database . . . . What is the email address associated with your Federal Student Loans?" and "I just sent you an email with the direct Federal Student Aid website to obtain your Federal Student Aid Data. Please check your email/phone and let me know if you received it so I can walk you through step by step . . ." (Decl. of K. Freitag, Att. A at 12) In reality, Defendants are apparently using the "FSA SECURE CODE/PASSWORD RESET" tool on the Federal Student Aid website to request access and using the misrepresentation that they are sending the codes, rather than the FSA, to get security codes from consumers. This tactic perpetuated Defendants' deception, with one consumer stating that "[t]he fact that [Defendants' telemarketer] was able to change [her] password without asking any questions made [her] trust him and believe that he was with [the Department of Education]. As a result [she] provided him with the number [she] received by text." (Doc. 4-3 at APP 2-3 ¶5)

The sales scripts and accompanying notes also highlight the high-pressure tactics used by Defendants' telemarketers to close deals. For example, they push "Same Day Closes," noting that "[n]othing will change overnight except them overthinking the situation and deciding not to

move forward," and directing employees to "create a sense of urgency." (Decl. of K. Freitag, Att. A at 8) The script also includes a "Rebuttals" page to help telemarketers deal with hesitant consumers including those who "don't feel comfortable." (Decl. of K. Freitag, Att. A at 4) Further, the script reveals cunning tactics like putting consumers on hold before telling them "CONGRATULATIONS you did get approved" for a program for which Defendants have not, in fact, secured approval. (*see* Decl. of K. Freitag, Att. A at 17).

    **B.**    **Defendants' Pattern of Operating Through Several Entities to Evade Detection.**

As the FTC noted in its Motion, Defendants have a history of creating new entities to perpetuate their scheme under different names. And indeed, readily available on the manager's desk at Defendants' business premises was a cheat sheet outlining the steps to create a new shell company. (Decl. of K. Freitag, Att. B at 1) This 18-step sheet includes guidance for everything from picking a name, registering "an LLC in Nevada" using a virtual address, having a Debt Pay Pro system set up to "mirror the Alumni Advantage account exactly," (referencing the name of an apparent predecessor entity to Superior Servicing). (*Id.*; Decl. of K. Slaughter, Doc. 3-9, Appx. at APP 470) The document identifies Defendant Merdjanian as a resource, including noting that "Dennise can walk you through" creating a payroll account. (Decl. of K. Freitag, Att. B at 1)

Defendants' practice of cycling through various corporate names assisted them in evading responsibility for their actions. As discussed in our Motion, nearly one thousand consumers filed complaints against Superior Servicing since the beginning of 2023. As one corporate name garners a well-earned reputation for fraud, they simply move the same scheme to a new name.

**C.      Defendants' Efforts to Keep Consumers Enrolled**

Documents at the business premises also show that Defendants' focus was to keep enrolled consumers' monthly fees rolling in, not satisfy consumers. For example, handwritten notes in the manager's office titled "Meeting w/ Dennise recap" and dated "11/12/24" include a line stating, "cancellation rates too high—will be FIRED." (Decl. of K. Freitag, Att. C at 1) This highlights the ongoing nature of the violations, regardless of the business name used in the process.

## IV.    EVIDENCE SUPPORTS EXTENDED FREEZES AND DOCUMENT PRESERVATION

Defendants' history of moving money and operations highlights the need to continue the asset freeze and document preservation requirements. The evidence collected in the FTC's investigation and the Receiver's immediate access illustrate that Defendants have a history of creating shell companies to perpetuate their scheme (Decl. of Freitag, Att. B; Slaughter, Doc. 3-9 at APP 478-79 ¶41-43) and transferring money between their successive, interrelated entities. (Slaughter, Doc. 3-9 at APP 483-84) Additionally, because Defendants have operated through a maze of corporate entities, the Receiver will need to continue to secure documents and data from banks and other institutions to identify all new entities, accounts, and assets connected to the Defendants. Accordingly, the risk of asset dissipation and document destruction remains high and continued relief is necessary to prevent it.

## V.    CONCLUSION

The evidence acquired after entry of the TRO further establishes that the Defendants' business has operated on a pattern of continuous deception that was derailed only by this Court's TRO. To ensure that Defendants do not continue to harm consumers, or dissipate assets, this Court should enter the proposed preliminary injunction.

1

2                                              Respectfully submitted,

3    Dated:  December 4, 2024                    _/s/ John R. O'Gorman_____
                                               JOHN R. O'GORMAN
4                                              Texas Bar No. 24121292

5                                              LUIS GALLEGOS
                                               Oklahoma Bar No. 19098
6
                                               REID TEPFER
7                                              Texas Bar No. 24079444

8                                              Federal Trade Commission
                                               1999 Bryan St., Suite 2150
9                                              Dallas, TX 75201
                                               (202) 758-7704 (O'Gorman)
10                                             (214) 979-9383 (Gallegos)
                                               (214) 979-9395 (Tepfer)
11                                             jogorman@ftc.gov
                                               lgallegos@ftc.gov
12                                             rtepfer@ftc.gov

13                                             Attorneys for Plaintiff
                                               FEDERAL TRADE COMMISSION
14

15

16

17

18

19

20

21

22

23

24