LUIS GALLEGOS
    Oklahoma Bar No. 19098; lgallegos@ftc.gov
REID TEPFER
    Texas Bar No. 24079444; rtepfer@ftc.gov

Federal Trade Commission
1999 Bryan St., Suite 2150
Dallas, TX 75201
Phone: (214) 979-9383 (Gallegos)
Fax: (214) 953-3079

*Attorneys for Federal Trade Commission*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>      v.<br><br>SUPERIOR SERVICING LLC, a limited liability company;<br><br>SUNRISE SOLUTIONS USA LLC, a limited liability company;<br><br>ALUMNI ADVANTAGE LLC, a limited liability company;<br><br>STUDENT PROCESSING CENTER GROUP LLC, a limited liability company;<br><br>SPCTWO LLC, a limited liability company;<br><br>ACCREDIT LLC, a limited liability company;<br><br>DENNISE MERDJANIAN, aka Dennise Correa, individually and as managing member of SUPERIOR SERVICING LLC,<br><br>ERIC CALDWELL, individually and as owner, officer, or manager of SUPERIOR SERVICING | Case No. 24-cv-2163-GMN-MDC<br><br>**ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF AS TO DEFENDANTS SUPERIOR SERVICING LLC, SUNRISE SOLUTIONS USA LLC, ALUMNI ADVANTAGE LLC, STUDENT PROCESSING CENTER LLC, SPCTWO LLC, AND ACCREDIT LLC** |

LLC, SUNRISE SOLUTIONS USA LLC, ALUMNI ADVANTAGE LLC, STUDENT PROCESSING CENTER GROUP LLC, SPCTWO LLC, and ACCREDIT LLC; and

DAVID HERNANDEZ, individually and as owner, officer, or manager of SUPERIOR SERVICING LLC, SUNRISE SOLUTIONS USA LLC, ALUMNI ADVANTAGE LLC, STUDENT PROCESSING CENTER GROUP LLC, SPCTWO LLC, and ACCREDIT LLC,

Defendants.

Plaintiff, the Federal Trade Commission ("Commission"), filed its Complaint for Permanent Injunction, Monetary Judgment, and Other Relief against Defendants Superior Servicing LLC and Dennise Merdjanian on November 28, 2024. Subsequently, on March 26, 2025, Plaintiff filed its First Amended Complaint for Permanent Injunction, Monetary Judgment, and Other Relief ("Amended Complaint"), which added Defendants Sunrise Solutions USA LLC, Alumni Advantage LLC, Student Processing Center Group LLC, SPCTWO LLC, Accredit LLC, Eric Caldwell, and David Hernandez. Plaintiff's Amended Complaint alleges that Defendants violated Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, Section 521 of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 6821, and the FTC's Trade Regulation Rule on Impersonation of Government and Businesses ("Impersonation Rule"), 16 C.F.R. Part 461, in connection with Defendants' marketing and sale of student loan debt relief services.

On May 29, 2025, pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court entered defaults against Defendants Superior Servicing LLC, Sunrise Solutions USA LLC, Alumni Advantage LLC, Student Processing Center Group LLC, SPCTWO LLC, and Accredit LLC ("Defaulting Defendants"). The FTC has now moved this Court for entry of a judgment by

default and permanent injunction, pursuant to Federal Rule of Civil Procedure 55(b)(2), against the Defaulting Defendants. The Court, having considered the memoranda and documents cited in support of said motion, and all other pleadings and files in this action, and now being fully advised in the premises, **GRANTS** the FTC's motion and makes the following findings of law and fact.

## FINDINGS

1.    The Commission brings this action pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) & 57b, Section 6(b) of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6105(b), and Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a). The FTC seeks both permanent injunctive and monetary relief for deceptive and unlawful acts and practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), multiple provisions of the FTC's TSR, 16 C.F.R. Part 310, Section 521 of the GLB Act, 15 U.S.C. § 6821, and the Impersonation Rule, 16 C.F.R. Part 461, by the Defaulting Defendants in connection with the marketing and sale of student loan debt relief services.

2.    The Commission has authority under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a), to seek the relief it has requested, and the Amended Complaint states a claim upon which relief can be granted against the Defaulting Defendants.

3.    This Court has jurisdiction over the subject matter of this action and personal jurisdiction over the Defaulting Defendants pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6105(b), and 6822(a). Venue in the District of Nevada is proper under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b) and (c).

4.      On November 25, 2024, Defendants Superior Servicing LLC and Dennise Merdjanian were properly served with a copy of the Complaint and Summons.

5.      On April 15, 2025, Defaulting Defendants were properly served with a copy of the Amended Complaint and Summons.

6.      The time within which the Defaulting Defendants could answer, plead, or otherwise defend against the Amended Complaint has expired.

7.      The time for the Defaulting Defendants to answer, plead, or otherwise defend against the Amended Complaint has not been extended.

8.      The Court is not aware that any Defaulting Defendant has filed for bankruptcy.

9.      None of the Defaulting Defendants have filed an answer or otherwise responded to the Amended Complaint.

10.     The Clerk of Court entered the Defaulting Defendants' default on May 29, 2025. ECF No. 70.

11.     Because of the Defaulting Defendants' default, the allegations in the Amended Complaint filed in this action are taken as true.

12.     The FTC is an agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices in or affecting commerce. The FTC also enforces the GLB Act, 15 U.S.C. §§ 6821-27, which prohibits any person from obtaining or attempting to obtain

customer information of a financial institution relating to another person by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution. The FTC also enforces the Impersonation Rule, 16 C.F.R. Part 461, which prohibits the impersonation of the government and businesses.

13. Defendant Superior Servicing LLC is a Nevada limited liability company. Superior Servicing transacts or has transacted business in this district and throughout the United States. At all times relevant to the Complaint and Amended Complaint, acting alone or in concert with others, Superior Servicing LLC has advertised, marketed, distributed, or sold student loan debt relief services to consumers throughout the United States.

14. Defendant Sunrise Solutions USA LLC is a Nevada limited liability company. Sunrise Solutions USA transacts or has transacted business in this district and throughout the United States. At all times relevant to the Amended Complaint, acting alone or in concert with others, Sunrise Solutions USA has advertised, marketed, distributed, or sold student loan debt relief services to consumers throughout the United States.

15. Defendant Alumni Advantage LLC, sometimes referred to as Alumni Advantages, is a Nevada limited liability company. Alumni Advantage transacts or has transacted business in this district and throughout the United States. At all times relevant to the Amended Complaint, acting alone or in concert with others, Alumni Advantage has advertised, marketed, distributed, or sold student loan debt relief services to consumers throughout the United States.

16. Defendant Student Processing Center Group LLC is a Nevada limited liability company. Student Processing Center Group transacts or has transacted business in this district and throughout the United States. At all times relevant to the Amended Complaint, acting alone

or in concert with others, Student Processing Center Group has advertised, marketed, distributed, or sold student loan debt relief services to consumers throughout the United States.

17. Defendant SPCTWO LLC is a Nevada limited liability company. SPCTWO transacts or has transacted business in this district and throughout the United States. At all times relevant to the Amended Complaint, acting alone or in concert with others, SPCTWO has advertised, marketed, distributed, or sold student loan debt relief services to consumers throughout the United States.

18. Defendant Accredit LLC is a Nevada limited liability company. Accredit transacts or has transacted business in this district and throughout the United States. At all times relevant to the Amended Complaint, acting alone or in concert with others, Accredit has advertised, marketed, distributed, or sold student loan debt relief services to consumers throughout the United States.

19. The Defaulting Defendants have operated as a common enterprise while engaging in the unlawful acts and practices described below. They have conducted the business practices described in the Complaint through an interrelated network of companies that have common ownership, management, business functions, employees, managers, and office locations, and that commingled funds. Because they have operated as a common enterprise, each Defaulting Defendant is liable for the acts and practices described below.

20. At all times relevant to the Amended Complaint, the Defaulting Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

21. Defaulting Defendants have deceived consumers into paying hundreds of dollars for student loan debt relief services that are made up, not as described, or simply never

materialize. Defaulting Defendants told consumers that (1) Defaulting Defendants could obtain for consumers repayment plans that would lower their monthly student loan payment amounts; (2) Defaulting Defendants would secure forgiveness of their student loan debt; (3) Consumers' monthly payments to Defaulting Defendants would be applied towards consumers' student loans; (4) Defaulting Defendants were affiliated with the Department of Education or its approved loan servicers; (5) Defaulting Defendants would take over servicing consumers federal student loans.

22.     But Defaulting Defendants' promises were false. Defaulting Defendants did not seek or deliver loan repayment plans or loan forgiveness. Consumers' payments to Defaulting Defendants were not applied to their student loans. Defaulting Defendants were not affiliated with the Department of Education or its approved loan servicers. Nor did Defaulting Defendants assume responsibility for servicing consumers' student loans. Defaulting Defendants were not affiliated with the Department of Education or its approved loan servicers and did not enroll consumers in payment plans that reduced their monthly obligation, sought or obtained forgiveness of their loans, applied consumers' monthly payments towards consumers' student loans, or taken over servicing their loans.

23.     Defaulting Defendants' conduct violated the FTC Act, the TSR, GLB, and the Impersonation Rule.

24.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of student loan debt relief services, Defaulting Defendants represented that (a) consumers who paid for Defaulting Defendants' debt relief services would have their loan repayment amounts reduced; (b) consumers who paid for Defaulting Defendants' debt relief services were guaranteed to receive loan forgiveness; (c) consumers' monthly payments to Defaulting Defendants would be applied toward consumers' student loans; (d) Defaulting

Defendants were affiliated with the U.S. Department of Education or its approved loan servicers; and (e) Defaulting Defendants would assume responsibility for the servicing of consumers' student loans. In fact, these representations were false or misleading, or were not substantiated at the time Defaulting Defendants made them. Therefore, these representations constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Accordingly, the Defaulting Defendants have violated Section 5 of the FTC Act as alleged in Count I of the Amended Complaint.

25.     In numerous instances, Defaulting Defendants have, in connection with the telemarketing of student loan debt relief services, requested or received payment of a fee or consideration for debt relief services before: a) Defaulting Defendants have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and (b) the customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor. These acts or practices are abusive telemarketing acts and practices that violate Section 310.4(a)(5)(i) of the TSR, 16 C.F.R. § 310.4(a)(5)(i), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Accordingly, Defaulting Defendants have violated Section 310.4(a)(5)(i) of the TSR and Section 5(a) of the FTC Act as alleged in Count II of the Amended Complaint.

26.     In numerous instances, Defaulting Defendants have, in connection with the telemarketing of student loan debt relief services, misrepresented material aspects of their debt relief services, including that (a) consumers who paid for Defaulting Defendants' debt relief services would have their loan repayment amounts reduced; (b) consumers who paid for Defaulting Defendants' debt relief services were guaranteed to receive loan forgiveness;

(c) consumers' monthly payments to Defaulting Defendants would be applied towards consumers' student loans; (d) Defaulting Defendants were affiliated with the U.S. Department of Education or its approved loan servicers; and (e) Defaulting Defendants would assume responsibility for the servicing of consumers' student loans. These acts or practices are deceptive telemarketing acts and practices that violate Section 310.3(a)(2)(x) of the TSR, 16 C.F.R. § 310.3(a)(2)(x), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Accordingly, Defaulting Defendants have violated Section 310.3(a)(2)(x) of the TSR and Section 5(a) of the FTC Act as alleged in Count III of the Amended Complaint.

27.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of student loan debt relief services, Defaulting Defendants have made false, fictitious, or fraudulent statements or representations to customers of financial institutions to obtain or attempt to obtain customer information of a financial institution, such as bank account numbers and routing numbers, including by representing that: (a) consumers who paid for Defaulting Defendants' debt relief services would have their loan repayment amounts reduced; (b) consumers who paid for Defaulting Defendants' debt relief services were guaranteed to receive loan forgiveness; (c) consumers' monthly payments to Defaulting Defendants would be applied towards consumers' student loans; (d) Defaulting Defendants were affiliated with the U.S. Department of Education or its approved loan servicers; and (e) Defaulting Defendants would assume responsibility for the servicing of consumers' student loans. These acts and practices violate Section 521(a) of the GLB Act, 15 U.S.C. § 6821(a), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Accordingly, the Defaulting Defendants have violated Section 521(a) of the GLB Act and Section 5(a) as alleged in Count IV of the Amended Complaint.

28.    In numerous instances on or after April 1, 2024, in connection with the advertising, marketing, promotion, offering for sale, or sale of student loan debt relief services, Defaulting Defendants have materially misrepresented that they were affiliated with the federal government, including specifically the U.S. Department of Education. These representations violate Section 461.2(b) of the Impersonation Rule, 16 C.F.R. § 461.2(b) and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Accordingly, Defaulting Defendants have violated Section 461.2(b) of the Impersonation Rule and Section 5(a) of the FTC Act as alleged in Count V of the Amended Complaint.

29.    In numerous instances on or after April 1, 2024, in connection with the advertising, marketing, promotion, offering for sale, or sale of student loan debt relief services, Defaulting Defendants have materially misrepresented that they were affiliated with or endorsed by the consumer's then-existing student loan servicer. These representations violate Section 461.3(b) of the Impersonation Rule, 16 C.F.R. § 461.3(b) and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Accordingly, the Defaulting Defendants have violated Section 461.3(b) of the Impersonation Rule and Section 5(a) of the FTC Act as alleged in Count VI of the Amended Complaint.

30.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), authorizes this Court to grant injunctive relief as the Court may deem appropriate to halt violations of any law enforced by the FTC.

31.    Consumers have suffered and will continue to suffer substantial injury as a result of Defaulting Defendants' violations of Section 5 of the FTC Act, the TSR, Section 521 of the GLB Act, and the Impersonation Rule. The Court finds that, absent a permanent injunction,

Defaulting Defendants are likely to continue to engage in the activities alleged in the Amended Complaint.

32.    The danger of future violations by Defaulting Defendants justifies the issuance of permanent injunctive relief. Specifically, it is proper in this case to issue a permanent injunction that: (a) prohibits Defaulting Defendants from marketing or selling secured or unsecured debt relief products or services; (b) prohibits Defaulting Defendants from engaging in telemarketing; (c) prohibits Defaulting Defendants from using false, fictitious, or fraudulent statements to obtain or attempt to obtain customer information of a financial institution; (d) prohibits Defaulting Defendants from impersonating or falsely representing affiliation with any government entity or business; (e) provides other reasonable fencing-in relief; and (f) provides such other ancillary relief as is necessary to assist the FTC and the Court in monitoring Defaulting Defendants' compliance with such a permanent injunction.

33.    Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defaulting Defendants' violations of the TSR, Section 521 of the GLB Act, and the Impersonation Rule, including but not limited to refund of money or return of property.

34.    No hearing is necessary for the Court to make a determination with respect to monetary relief, as such relief is established through undisputed evidence already submitted to the Court. That evidence demonstrates that Defaulting Defendants have caused $45,959,012.69 in consumer harm from their violations of the TSR, Section 521 of the GLB Act, and the Impersonation Rule, in the three years prior to the FTC's filing of the Complaint.

35.     It is proper in this case to enter a monetary judgment, pursuant to Section 19 of the FTC Act, 15 U.S.C. § 57b, against Defaulting Defendants to redress consumer injury caused by Defaulting Defendants' violations of the TSR, Section 521 of the GLB Act, and the Impersonation Rule. The FTC is entitled to judgment against Defaulting Defendants in the amount of $45,959,012.69.

36.     It is proper in this case to continue the receivership over Defaulting Defendants.

37.     This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

38.     Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this Order are binding upon each Defaulting Defendant, their successors and assigns, and their officers, agents, employees, and attorneys, and upon those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise.

39.     Entry of this Order is in the public interest.

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

A.     "**Asset**" means any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held, whether tangible, intangible, digital, intellectual property, or otherwise.

B.     "**Assisting Others**" includes:

a.     Performing customer service functions, including receiving or responding to Consumer complaints;

b.     Formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail

solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

c.     Formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

d.     Providing names of, or assisting in the generation of, potential customers;

e.     Performing marketing, billing, payment processing, or payment services of any kind; or

f.     Acting or serving as an owner, officer, director, manager, or principal of any entity.

C.     "**Clearly and Conspicuously**" means that a required disclosure is easily noticeable (*i.e.*, difficult to miss) and easily understandable by reasonable Consumers, including in all of the following ways:

1.     In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.     A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for reasonable Consumers to easily hear and understand it.

4. In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5. The disclosure must use diction and syntax understandable to reasonable Consumers and must appear in each language in which the representation that requires the disclosure appears.

6. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8. When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "reasonable Consumers" includes members of that group.

D. "**Consumer**" means any Person.

E. "**Defaulting Defendants**" means Superior Servicing LLC, Sunrise Solutions USA, LLC, Alumni Advantage LLC, Student Processing Center Group LLC, SPCTWO LLC, Accredit LLC and their successors and assigns.

F. "**Defendants**" means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

a. "**Corporate Defendants**" means Superior Servicing LLC, Sunrise

-14-

Solutions USA, LLC, Alumni Advantage LLC, Student Processing Center Group LLC, SPCTWO LLC, Accredit LLC and their successors and assigns.

      b.     "**Individual Defendants**" means Dennise Merdjanian, Eric Caldwell, and David Hernandez.

G.     "**Person**" means a natural person, an organization, or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

H.     "**Receiver**" means Krista Freitag, the Court-appointed Receiver in this case.

I.     "**Receivership Entities**" means Defaulting Defendants, as well as any other entity that has conducted any business related to Defendants' student loan debt relief services business, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and which the Receiver has reason to believe is owned or controlled in whole or in part by any Defendant, including, but not limited to, Superior Servicing LLC, Sunrise Solutions USA, LLC, Alumni Advantage, LLC, Student Processing Center Group, LLC, SPCTWO, LLC, Accredit, LLC, Gold West Financial, LLC, DM Financial, LLC, LJC Music National LLC, South Coast Services, LLC, Business Done Right Inc., ET&C Holdings, LLC, Capital Servicing, LLC, Cornerstone Doc Prep, Inc., Amerifed Doc Prep, LLC, Amerifed Servicing, Inc., Scholastic Solutions LLC, and First Clover Capital, Inc.

J.     "**Secured or Unsecured Debt Relief Product or Service**" means:

     1.     With respect to any mortgage, loan, debt, or obligation between a Person and one or more secured or unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication, to:

          a.     stop, prevent, or postpone any mortgage or deed of foreclosure sale for a

Person's dwelling, any other sale of collateral, any repossession of a Person's dwelling or other collateral, or otherwise save a Person's dwelling or other collateral from foreclosure or repossession;

b.   negotiate, obtain, or arrange a modification, or renegotiate, settle, reduce, or in any way alter any terms of the mortgage, loan, debt, or obligation, including a reduction in the amount of interest, principal balance, monthly payments, or fees owed by a Person to a secured or unsecured creditor or debt collector;

c.   obtain any forbearance or modification in the timing of payments from any secured or unsecured holder or servicer of any mortgage, loan, debt, or obligation;

d.   negotiate, obtain, or arrange any extension of the period of time within which a Person may (i) cure his or her default on the mortgage, loan, debt, or obligation, (ii) reinstate his or her mortgage, loan, debt, or obligation, (iii) redeem a dwelling or other collateral, or (iv) exercise any right to reinstate the mortgage, loan, debt, or obligation or redeem a dwelling or other collateral;

e.   obtain any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling or other collateral; or

f.   negotiate, obtain, or arrange (i) a short sale of a dwelling or other collateral, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a mortgage, loan, debt, or obligation other than a sale to a third party that is not the secured or unsecured loan holder;

The foregoing shall include any manner of claimed assistance, including auditing or examining a Person's application for the mortgage, loan, debt, or obligation.

2.    With respect to any loan, debt, or obligation between a Person and one or more unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication, to:

a.    repay one or more unsecured loans, debts, or obligations; or

b.    combine unsecured loans, debts, or obligations into one or more new loans, debts, or obligations.

K.    "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call.

## ORDER

### I.    BAN ON SECURED OR UNSECURED DEBT RELIEF PRODUCTS OR SERVICES

IT IS ORDERED that Defaulting Defendants, whether acting directly or through an intermediary, are permanently restrained and enjoined from:

A.    Advertising, marketing, promoting, offering for sale, or selling any Secured or Unsecured Debt Relief Product or Service; and

B.    Assisting Others in the advertising, marketing, promoting, offering for sale, or selling any Secured or Unsecured Debt Relief Product or Service.

### II.    BAN ON TELEMARKETING

IT IS FURTHER ORDERED that Defaulting Defendants are permanently restrained and enjoined from participating in Telemarketing, whether directly or through an intermediary, and including by consulting, brokering, planning, investing, or advising others regarding Telemarketing.

### III.    PROHIBITED BUSINESS ACTIVITIES

IT IS FURTHER ORDERED that Defaulting Defendants, Defaulting Defendants officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promoting, distributing, servicing, offering, or selling any product or service are permanently restrained and enjoined from engaging in, or Assisting Others engaged in, the following:

A.    Misrepresenting, expressly or by implication:

1.    Any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including the likelihood of a Consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the Consumer;

2.    The nature, expertise, position, or job title of any Person who provides any product, service, plan, or program;

3.    The ability to improve or otherwise affect a Consumer's credit record, credit history, credit rating, or ability to obtain credit, including that a Consumer's credit record, credit history, credit rating, or ability to obtain credit can be improved by permanently removing negative information from the Consumer's credit record or history even where such information is accurate and not obsolete;

4.    That a Consumer will save money;

5.    Any benefit of such product or service;

6.    Any requirements for obtaining such product or service;

-18-

7. The existence, amount, or timing of any fees or charges, or the total cost to purchase, receive, or use such product or service; or

8. Any other fact material to Consumers concerning any product or service, such as: the total costs; any material restrictions, limitations, or conditions to purchase, receive, or use such product or service; or any material aspect of the performance, efficacy, nature, or central characteristics of such product or service.

B. Failing to disclose Clearly and Conspicuously the fact, if true, that a Consumer must activate, request, initiate, or otherwise take some affirmative action in order to receive or use such product or service; or

C. Making any representation, expressly or by implication, about the benefits, performance, or efficacy of any product or service, unless the representation is non-misleading, including that, at the time such representation is made, such Defaulting Defendant possesses and relies upon competent and reliable evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant fields, when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true.

## IV.     INJUNCTION RELATING TO IMPERSONATING ANY GOVERNMENT ENTITY OR PERSON

IT IS FURTHER ORDERED that Defaulting Defendants, Defaulting Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the marketing, promoting, distributing, servicing, offering, or selling any product or service, are hereby permanently restrained and enjoined from:

A.      Misrepresenting or Assisting Others in misrepresenting, expressly or by implication, that any Person is affiliated with, endorsed by, sponsored by, or approved by, or otherwise connected to any other Person; government entity; public, non-profit, or other non-commercial program; or any other program; and

B.      Violating the FTC's Impersonation Rule, 16 C.F.R. Part 461, a copy of which is attached as Attachment A.

## V.    INJUNCTION RELATING TO CONSUMER FINANCIAL INFORMATION

IT IS FURTHER ORDERED that Defaulting Defendants, Defaulting Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from:

A.      Making any false, fictitious, or fraudulent statement or representation to any Person to obtain or attempt to obtain information of a Consumer, including, but not limited to, credit or debit card numbers, bank account numbers and routing numbers, and Consumer credit reports; or

B.      Violating the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, §§ 6821-6827, a copy of which is attached as Attachment B.

## VI.    MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.      Judgment in the amount of **FORTY-FIVE MILLION NINE HUNDRED FIFTY-NINE THOUSAND AND TWELVE AND 69/100 Dollars, ($45,959,012.69)** is entered in favor of the Commission against Defaulting Defendants, jointly and severally with any other Defendant, to the extent subsequently ordered, as monetary relief.

B.      The monetary judgment set forth in Section VI.A is enforceable against any Asset, real or personal, whether located within the United States or outside the United States, owned jointly or singly by, on behalf of, for the benefit of, in trust by or for, or as a deposit for future goods or services to be provided to, any Defaulting Defendant, whether held as tenants in common, joint tenants with or without the right of survivorship, tenants by the entirety, and/or community property.

C.      Defaulting Defendants relinquish dominion and all legal and equitable right, title, and interest in all Assets transferred pursuant to this Order and may not seek the return of any Assets.

D.      Any entity or Person, including any Defaulting Defendant or any financial institution holding any Defaulting Defendant's Assets are ordered to transfer those Assets to the Commission or Receiver, in accordance with instructions provided by a representative of the Commission or Receiver, within seven days of receiving notice of this Order.

E.      All money received by the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for Consumer relief, such as redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to Consumers is wholly or partially impracticable or money remains after such redress is completed, the Commission may apply any remaining money for such related relief (including Consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any money not used for such relief is to be deposited to the U.S. Treasury. Defaulting Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

F.     The asset freeze is modified to permit the transfers and liquidations identified in this Section. Upon completion of receivership, the asset freeze as to any Defaulting Defendant is dissolved.

## VII.    CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defaulting Defendants, Defaulting Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order are permanently restrained and enjoined from directly or indirectly:

A.     failing to provide sufficient customer information to enable the Commission to efficiently administer Consumer redress. If a representative of the Commission requests in writing any information related to redress from any Defaulting Defendant, such Defaulting Defendant must provide it, in the form prescribed by the Commission, within 14 days;

B.     disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security number, FSA ID, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defaulting Defendant obtained prior to entry of this Order in connection with the marketing and sale of any Secured or Unsecured Debt Relief Product or Service; and

C.     failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## VIII.  RECEIVERSHIP TERMINATION

IT IS FURTHER ORDERED that Krista Freitag shall continue as a permanent Receiver over the Receivership Entities with full powers of a permanent Receiver, including those powers set forth in the Preliminary Injunctions entered on December 6 and 19, 2024 (ECF Nos. 30 and 42), and including full liquidation powers. As set forth in the Order Granting Stipulation for Permanent Injunction, Monetary Judgment, and Other Relief as to Defendant Dennise Merdjanian (ECF No. 108) ("Merdjanian Final Order"), unless any party or the Receiver requests the Court to extend the Receiver's term for good cause, the Receiver must complete her duties within 180 days of the Merdjanian Final Order's February 10, 2026 entry. Upon termination of the receivership and final payment to the Receiver of all approved fees, costs, and expenses, the Receiver shall turn over to the Commission or its designated agent all remaining Assets in the receivership estate.

## IX.    ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defaulting Defendants obtain acknowledgments of receipt of this Order:

A.      Each Defaulting Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, each Defaulting Defendant for any business that such Defaulting Defendant, individually or collectively with any other Defendant, is the majority owner or controls directly or indirectly, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and

(3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defaulting Defendant delivered a copy of this Order, Defaulting Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## X.    COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that each Defaulting Defendant make timely submissions to the Commission:

A.      One year after entry of this Order, each Defaulting Defendant must submit a compliance report, sworn under penalty of perjury. Each Defaulting Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with such Defaulting Defendant; (b) identify all of such Defaulting Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Defaulting Defendant must describe if they know or should know due to their own involvement); (d) describe in detail whether and how such Defaulting Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.      For 20 years after entry of this Order, each Defaulting Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the

following:

1.    Each Defaulting Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any entity that such Defaulting Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.    Additionally, each Defaulting Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defaulting Defendant performs services whether as an employee or otherwise and any entity in which such Defaulting Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.    Each Defaulting Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defaulting Defendant within 14 days of its filing.

D.    Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.    Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or

sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: *FTC v. Superior Servicing, et al.*, Matter No. X250009.

### XI.   RECORDKEEPING

IT IS FURTHER ORDERED that each Defaulting Defendant must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, each Defaulting Defendant, for any business that such Defaulting Defendant, individually or collectively with any other Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.   accounting records showing the revenues from all goods or services sold;

B.   personnel records showing, for each Person providing services, whether as an employee or otherwise, that Person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.   records of all Consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.   all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

E.   a copy of each unique advertisement or other marketing material.

F.   copies of all contracts and communications with vendors providing print or mail services;

G.   copies of all contracts and communications with vendors providing payment processing services; and

H.    copies of all contracts with vendors providing lead generation services.

### XII.    COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring each Defaulting Defendant's compliance with this Order, including the failure to transfer any Assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the Commission, such Defaulting Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including depositions by remote means), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the Commission is authorized to communicate directly with each Defaulting Defendant. Each Defaulting Defendant must permit representatives of the Commission to interview any employee or other Person affiliated with such Defaulting Defendant who has agreed to such an interview. The Person interviewed may have counsel present.

C.    The Commission may use all other lawful means, including posing, through its representatives as Consumers, suppliers, or other individuals or entities, to Defaulting Defendants or any individual or entity affiliated with Defaulting Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any Consumer reporting agency must furnish Consumer reports concerning any Defaulting Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

### XIII.    RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**DATED** this __24__ day of June, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court

# ATTACHMENT A

# COPY OF

# THE TRADE REGULATION RULE ON

# IMPERSONATION OF GOVERNMENT AND

# BUSINESSES

# 16 C.F.R. Part 461

Case 2:24-cv-02163-GMN-MDC    Document 119    Filed 06/26/26    Page 30 of 47

This content is from the eCFR and is authoritative but unofficial.

**Title 16 —Commercial Practices**
**Chapter I —Federal Trade Commission**
**Subchapter D —Trade Regulation Rules**

**Part 461**  Rule on Impersonation of Government and Businesses
　**§ 461.1**  Definitions.
　**§ 461.2**  Impersonation of government prohibited.
　**§ 461.3**  Impersonation of businesses prohibited.

# PART 461—RULE ON IMPERSONATION OF GOVERNMENT AND BUSINESSES

**Authority:**  Authority: 15 U.S.C. 41 through 58.

**Source:**  89 FR 15030, Mar. 1, 2024, unless otherwise noted.

## § 461.1 Definitions.

As used in this part:

*Business* means a corporation, partnership, association, or any other entity that provides goods or services, including not-for-profit entities.

*Government* includes federal, state, local, and tribal governments as well as agencies and departments thereof.

*Materially* means likely to affect a person's choice of, or conduct regarding, goods or services.

*Officer* includes executives, officials, employees, and agents.

## § 461.2 Impersonation of government prohibited.

It is a violation of this part, and an unfair or deceptive act or practice to:

  (a)  materially and falsely pose as, directly or by implication, a government entity or officer thereof, in or affecting commerce as *commerce* is defined in the Federal Trade Commission Act (15 U.S.C. 44); or

  (b)  materially misrepresent, directly or by implication, affiliation with, including endorsement or sponsorship by, a government entity or officer thereof, in or affecting commerce as *commerce* is defined in the Federal Trade Commission Act (15 U.S.C. 44).

## § 461.3 Impersonation of businesses prohibited.

It is a violation of this part, and an unfair or deceptive act or practice to:

Case 2:24-cv-02163-GMN-MDC    Document 119    Filed 06/26/26    Page 31 of 47

(a)   materially and falsely pose as, directly or by implication, a business or officer thereof, in or affecting commerce as commerce is defined in the Federal Trade Commission Act (15 U.S.C. 44); or

(b)   materially misrepresent, directly or by implication, affiliation with, including endorsement or sponsorship by, a business or officer thereof, in or affecting commerce as commerce is defined in the Federal Trade Commission Act (15 U.S.C. 44).

# ATTACHMENT B

# COPY OF

# THE GRAMM-LEACH-BLILEY ACT

# 15 U.S.C. §§ 6801-6809, 6821-6827

```
15 USC Ch. 94: PRIVACY

From Title 15—COMMERCE AND TRADE
```

## CHAPTER 94—PRIVACY

### SUBCHAPTER I—DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION

Sec
6801.    Protection of nonpublic personal information.
6802.    Obligations with respect to disclosures of personal information.
6803.    Disclosure of institution privacy policy.
6804.    Rulemaking.
6805.    Enforcement.
6806.    Relation to other provisions.
6807.    Relation to State laws.
6808.    Study of information sharing among financial affiliates.
6809.    Definitions.

### SUBCHAPTER II—FRAUDULENT ACCESS TO FINANCIAL INFORMATION

6821.    Privacy protection for customer information of financial institutions.
6822.    Administrative enforcement.
6823.    Criminal penalty.
6824.    Relation to State laws.
6825.    Agency guidance.
6826.    Reports.
6827.    Definitions.

### SUBCHAPTER I—DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION

## §6801. Protection of nonpublic personal information

**(a) Privacy obligation policy**

It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.

**(b) Financial institutions safeguards**

In furtherance of the policy in subsection (a), each agency or authority described in section 6805(a) of this title, other than the Bureau of Consumer Financial Protection, shall establish appropriate standards for the financial institutions subject to their jurisdiction relating to administrative, technical, and physical safeguards—

(1) to insure the security and confidentiality of customer records and information;

(2) to protect against any anticipated threats or hazards to the security or integrity of such records; and

(3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer.

(Pub. L. 106–102, title V, §501, Nov. 12, 1999, 113 Stat. 1436; Pub. L. 111–203, title X, §1093(1), July 21, 2010, 124 Stat. 2095.)

### EDITORIAL NOTES

### AMENDMENTS

**2010**—Subsec. (b). Pub. L. 111–203 inserted ", other than the Bureau of Consumer Financial Protection," after "section 6805(a) of this title" in introductory provisions.

STATUTORY NOTES AND RELATED SUBSIDIARIES

## EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

## EFFECTIVE DATE

Pub. L. 106–102, title V, §510, Nov. 12, 1999, 113 Stat. 1445, provided that: "This subtitle [subtitle A (§§501–510) of title V of Pub. L. 106–102, enacting this subchapter and amending section 1681s of this title] shall take effect 6 months after the date on which rules are required to be prescribed under section 504(a)(3) [15 U.S.C. 6804(a)(3)], except—

"(1) to the extent that a later date is specified in the rules prescribed under section 504; and

"(2) that sections 504 [15 U.S.C. 6804] and 506 [enacting section 6806 of this title and amending section 1681s of this title] shall be effective upon enactment [Nov. 12, 1999]."

## §6802. Obligations with respect to disclosures of personal information

**(a) Notice requirements**

Except as otherwise provided in this subchapter, a financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 6803 of this title.

**(b) Opt out**

**(1) In general**

A financial institution may not disclose nonpublic personal information to a nonaffiliated third party unless—

(A) such financial institution clearly and conspicuously discloses to the consumer, in writing or in electronic form or other form permitted by the regulations prescribed under section 6804 of this title, that such information may be disclosed to such third party;

(B) the consumer is given the opportunity, before the time that such information is initially disclosed, to direct that such information not be disclosed to such third party; and

(C) the consumer is given an explanation of how the consumer can exercise that nondisclosure option.

**(2) Exception**

This subsection shall not prevent a financial institution from providing nonpublic personal information to a nonaffiliated third party to perform services for or functions on behalf of the financial institution, including marketing of the financial institution's own products or services, or financial products or services offered pursuant to joint agreements between two or more financial institutions that comply with the requirements imposed by the regulations prescribed under section 6804 of this title, if the financial institution fully discloses the providing of such information and enters into a contractual agreement with the third party that requires the third party to maintain the confidentiality of such information.

**(c) Limits on reuse of information**

Except as otherwise provided in this subchapter, a nonaffiliated third party that receives from a financial institution nonpublic personal information under this section shall not, directly or through an affiliate of such receiving third party, disclose such information to any other person that is a nonaffiliated third party of both the financial institution and such receiving third party, unless such disclosure would be lawful if made directly to such other person by the financial institution.

**(d) Limitations on the sharing of account number information for marketing purposes**

A financial institution shall not disclose, other than to a consumer reporting agency, an account number or similar form of access number or access code for a credit card account, deposit account, or transaction account of a consumer to any nonaffiliated third party for use in telemarketing, direct mail marketing, or other marketing through electronic mail to the consumer.

**(e) General exceptions**

Subsections (a) and (b) shall not prohibit the disclosure of nonpublic personal information—

(1) as necessary to effect, administer, or enforce a transaction requested or authorized by the consumer, or in connection with—

(A) servicing or processing a financial product or service requested or authorized by the consumer;

(B) maintaining or servicing the consumer's account with the financial institution, or with another entity as part of a private label credit card program or other extension of credit on behalf of such entity; or

(C) a proposed or actual securitization, secondary market sale (including sales of servicing rights), or similar transaction related to a transaction of the consumer;

(2) with the consent or at the direction of the consumer;

(3)(A) to protect the confidentiality or security of the financial institution's records pertaining to the consumer, the service or product, or the transaction therein; (B) to protect against or prevent actual or potential fraud, unauthorized transactions, claims, or other liability; (C) for required institutional risk control, or for resolving customer disputes or inquiries; (D) to persons holding a legal or beneficial interest relating to the consumer; or (E) to persons acting in a fiduciary or representative capacity on behalf of the consumer;

(4) to provide information to insurance rate advisory organizations, guaranty funds or agencies, applicable rating agencies of the financial institution, persons assessing the institution's compliance with industry standards, and the institution's attorneys, accountants, and auditors;

(5) to the extent specifically permitted or required under other provisions of law and in accordance with the Right to Financial Privacy Act of 1978 [12 U.S.C. 3401 et seq.], to law enforcement agencies (including the Bureau of Consumer Financial Protection [1] a Federal functional regulator, the Secretary of the Treasury with respect to subchapter II of chapter 53 of title 31, and chapter 2 of title I of Public Law 91–508 (12 U.S.C. 1951–1959), a State insurance authority, or the Federal Trade Commission), self-regulatory organizations, or for an investigation on a matter related to public safety;

(6)(A) to a consumer reporting agency in accordance with the Fair Credit Reporting Act [15 U.S.C. 1681 et seq.], or (B) from a consumer report reported by a consumer reporting agency;

(7) in connection with a proposed or actual sale, merger, transfer, or exchange of all or a portion of a business or operating unit if the disclosure of nonpublic personal information concerns solely consumers of such business or unit; or

(8) to comply with Federal, State, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities; or to respond to judicial process or government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as authorized by law.

(Pub. L. 106–102, title V, §502, Nov. 12, 1999, 113 Stat. 1437; Pub. L. 111–203, title X, §1093(2), July 21, 2010, 124 Stat. 2095.)

## EDITORIAL NOTES

## REFERENCES IN TEXT

This subchapter, referred to in subsecs. (a) and (c), was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

The Right to Financial Privacy Act of 1978, referred to in subsec. (e)(5), is title XI of Pub. L. 95–630, Nov. 10, 1978, 92 Stat. 3697, which is classified generally to chapter 35 (§3401 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see Short Title note set out under section 3401 of Title 12 and Tables.

Chapter 2 of title I of Public Law 91–508, referred to in subsec. (e)(5), is chapter 2 (§§121–129) of title I of Pub. L. 91–508, Oct. 26, 1970, 84 Stat. 1116, which is classified generally to chapter 21 (§1951 et seq.) of Title 12, Banks and Banking. For complete classification of chapter 2 to the Code, see Tables.

The Fair Credit Reporting Act, referred to in subsec. (e)(6)(A), is title VI of Pub. L. 90–321, as added by Pub. L. 91–508, title VI, §601, Oct. 26, 1970, 84 Stat. 1127, which is classified generally to subchapter III (§1681 et seq.) of chapter 41 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of this title and Tables.

## AMENDMENTS

**2010**—Subsec. (e)(5). Pub. L. 111–203 inserted "the Bureau of Consumer Financial Protection" after " (including".

## STATUTORY NOTES AND RELATED SUBSIDIARIES

## EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

[1] *So in original. Probably should be followed by a comma.*

## §6803. Disclosure of institution privacy policy

**(a) Disclosure required**

At the time of establishing a customer relationship with a consumer and not less than annually during the continuation of such relationship, a financial institution shall provide a clear and conspicuous disclosure to such consumer, in writing or in electronic form or other form permitted by the regulations prescribed under section 6804 of this title, of such financial institution's policies and practices with respect to—

(1) disclosing nonpublic personal information to affiliates and nonaffiliated third parties, consistent with section 6802 of this title, including the categories of information that may be disclosed;

(2) disclosing nonpublic personal information of persons who have ceased to be customers of the financial institution; and

(3) protecting the nonpublic personal information of consumers.

**(b) Regulations**

Disclosures required by subsection (a) shall be made in accordance with the regulations prescribed under section 6804 of this title.

**(c) Information to be included**

The disclosure required by subsection (a) shall include—

(1) the policies and practices of the institution with respect to disclosing nonpublic personal information to nonaffiliated third parties, other than agents of the institution, consistent with section 6802 of this title, and including—

(A) the categories of persons to whom the information is or may be disclosed, other than the persons to whom the information may be provided pursuant to section 6802(e) of this title; and

(B) the policies and practices of the institution with respect to disclosing of nonpublic personal information of persons who have ceased to be customers of the financial institution;

(2) the categories of nonpublic personal information that are collected by the financial institution;

(3) the policies that the institution maintains to protect the confidentiality and security of nonpublic personal information in accordance with section 6801 of this title; and

(4) the disclosures required, if any, under section 1681a(d)(2)(A)(iii) of this title.

**(d) Exemption for certified public accountants**

**(1) In general**

The disclosure requirements of subsection (a) do not apply to any person, to the extent that the person is—

(A) a certified public accountant;

(B) certified or licensed for such purpose by a State; and

(C) subject to any provision of law, rule, or regulation issued by a legislative or regulatory body of the State, including rules of professional conduct or ethics, that prohibits disclosure of nonpublic personal information without the knowing and expressed consent of the consumer.

**(2) Limitation**

Nothing in this subsection shall be construed to exempt or otherwise exclude any financial institution that is affiliated or becomes affiliated with a certified public accountant described in paragraph (1) from any provision of this section.

**(3) Definitions**

For purposes of this subsection, the term "State" means any State or territory of the United States, the District of Columbia, Puerto Rico, Guam, American Samoa, the Trust Territory of the Pacific Islands, the Virgin Islands, or the Northern Mariana Islands.

**(e) Model forms**

**(1) In general**

The agencies referred to in section 6804(a)(1) of this title shall jointly develop a model form which may be used, at the option of the financial institution, for the provision of disclosures under this section.

**(2) Format**

A model form developed under paragraph (1) shall—

(A) be comprehensible to consumers, with a clear format and design;

(B) provide for clear and conspicuous disclosures;

(C) enable consumers easily to identify the sharing practices of a financial institution and to compare privacy practices among financial institutions; and

(D) be succinct, and use an easily readable type font.

**(3) Timing**

A model form required to be developed by this subsection shall be issued in proposed form for public comment not later than 180 days after October 13, 2006.

**(4) Safe harbor**

Any financial institution that elects to provide the model form developed by the agencies under this subsection shall be deemed to be in compliance with the disclosures required under this section.

**(f) Exception to annual notice requirement**

A financial institution that—

(1) provides nonpublic personal information only in accordance with the provisions of subsection (b)(2) or (e) of section 6802 of this title or regulations prescribed under section 6804(b) of this title, and

(2) has not changed its policies and practices with regard to disclosing nonpublic personal information from the policies and practices that were disclosed in the most recent disclosure sent to consumers in accordance with this section,

shall not be required to provide an annual disclosure under this section until such time as the financial institution fails to comply with any criteria described in paragraph (1) or (2).

(Pub. L. 106–102, title V, §503, Nov. 12, 1999, 113 Stat. 1439; Pub. L. 109–351, title VI, §609, title VII, §728, Oct. 13, 2006, 120 Stat. 1983, 2003; Pub. L. 114–94, div. G, title LXXV, §75001, Dec. 4, 2015, 129 Stat. 1787.)

### EDITORIAL NOTES

### AMENDMENTS

**2015**—Subsec. (f). Pub. L. 114–94 added subsec. (f).

**2006**—Pub. L. 109–351 designated concluding provisions of subsec. (a) as (b), inserted heading, substituted "Disclosures required by subsection (a)" for "Such disclosures", redesignated former subsec. (b) as (c), and added subsecs. (d) and (e).

### EXECUTIVE DOCUMENTS

### TERMINATION OF TRUST TERRITORY OF THE PACIFIC ISLANDS

For termination of Trust Territory of the Pacific Islands, see note set out preceding section 1681 of Title 48, Territories and Insular Possessions.

## §6804. Rulemaking

**(a) Regulatory authority**

**(1) Rulemaking**

**(A) In general**

Except as provided in subparagraph (C), the Bureau of Consumer Financial Protection and the Securities and Exchange Commission shall have authority to prescribe such regulations as may be necessary to carry out the purposes of this subchapter with respect to financial institutions and other persons subject to their respective jurisdiction under section 6805 of this title (and notwithstanding subtitle B of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5511 et seq.]), except that the Bureau of Consumer Financial Protection shall not have authority to prescribe regulations with respect to the standards under section 6801 of this title.

**(B) CFTC**

The Commodity Futures Trading Commission shall have authority to prescribe such regulations as may be necessary to carry out the purposes of this subchapter with respect to financial institutions and other persons subject to the jurisdiction of the Commodity Futures Trading Commission under section 7b–2 of title 7.

**(C) Federal Trade Commission authority**

Notwithstanding the authority of the Bureau of Consumer Financial Protection under subparagraph (A), the Federal Trade Commission shall have authority to prescribe such regulations as may be necessary to carry out the purposes of this subchapter with respect to any financial institution that is a person described in section 1029(a) of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5519(a)].

**(D) Rule of construction**

Nothing in this paragraph shall be construed to alter, affect, or otherwise limit the authority of a State insurance authority to adopt regulations to carry out this subchapter.

### (2) Coordination, consistency, and comparability

Each of the agencies authorized under paragraph (1) to prescribe regulations shall consult and coordinate with the other such agencies and, as appropriate, and with [1] representatives of State insurance authorities designated by the National Association of Insurance Commissioners, for the purpose of assuring, to the extent possible, that the regulations prescribed by each such agency are consistent and comparable with the regulations prescribed by the other such agencies.

### (3) Procedures and deadline

Such regulations shall be prescribed in accordance with applicable requirements of title 5.

### (b) Authority to grant exceptions

The regulations prescribed under subsection (a) may include such additional exceptions to subsections (a) through (d) of section 6802 of this title as are deemed consistent with the purposes of this subchapter.

(Pub. L. 106–102, title V, §504, Nov. 12, 1999, 113 Stat. 1439; Pub. L. 111–203, title X, §1093(3), July 21, 2010, 124 Stat. 2095.)

#### EDITORIAL NOTES

#### REFERENCES IN TEXT

This subchapter, referred to in subsecs. (a)(1) and (b), was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

The Consumer Financial Protection Act of 2010, referred to in subsec. (a)(1)(A), is title X of Pub. L. 111–203, July 21, 2010, 124 Stat. 1955. Subtitle B (§§1021–1029A) of the Act is classified generally to part B (§5511 et seq.) of subchapter V of chapter 53 of Title 12, Banks and Banking. For complete classification of subtitle B to the Code, see Tables.

#### AMENDMENTS

**2010**—Subsec. (a)(1), (2). Pub. L. 111–203, §1093(3)(A), added pars. (1) and (2) and struck out former pars. (1) and (2) which related, respectively, to rulemaking by the Federal banking agencies, the National Credit Union Administration, the Secretary of the Treasury, the Securities and Exchange Commission, and the Federal Trade Commission, and consultation and coordination among these agencies and authorities to assure consistency and comparability of regulations.

Subsec. (a)(3). Pub. L. 111–203, §1093(3)(B), struck out "and shall be issued in final form not later than 6 months after November 12, 1999" after "title 5".

#### STATUTORY NOTES AND RELATED SUBSIDIARIES

#### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

[1] *So in original. Probably should be "and, as appropriate, with".*

## §6805. Enforcement

### (a) In general

Subject to subtitle B of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5511 et seq.], this subchapter and the regulations prescribed thereunder shall be enforced by the Bureau of Consumer Financial Protection, the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law, as follows:

(1) Under section 1818 of title 12, by the appropriate Federal banking agency, as defined in section 1813(q) of title 12, in the case of—

(A) national banks, Federal branches and Federal agencies of foreign banks, and any subsidiaries of such entities (except brokers, dealers, persons providing insurance, investment companies, and investment advisers);

(B) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, organizations operating under section 25 or 25A of the Federal Reserve Act [12 U.S.C. 601 et seq., 611 et seq.], and bank holding companies and their

nonbank subsidiaries or affiliates (except brokers, dealers, persons providing insurance, investment companies, and investment advisers);

   (C) banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System), insured State branches of foreign banks, and any subsidiaries of such entities (except brokers, dealers, persons providing insurance, investment companies, and investment advisers); and

   (D) savings associations the deposits of which are insured by the Federal Deposit Insurance Corporation, and any subsidiaries of such savings associations (except brokers, dealers, persons providing insurance, investment companies, and investment advisers).

   (2) Under the Federal Credit Union Act [12 U.S.C. 1751 et seq.], by the Board of the National Credit Union Administration with respect to any federally insured credit union, and any subsidiaries of such an entity.

   (3) Under the Securities Exchange Act of 1934 [15 U.S.C. 78a et seq.], by the Securities and Exchange Commission with respect to any broker or dealer.

   (4) Under the Investment Company Act of 1940 [15 U.S.C. 80a–1 et seq.], by the Securities and Exchange Commission with respect to investment companies.

   (5) Under the Investment Advisers Act of 1940 [15 U.S.C. 80b–1 et seq.], by the Securities and Exchange Commission with respect to investment advisers registered with the Commission under such Act.

   (6) Under State insurance law, in the case of any person engaged in providing insurance, by the applicable State insurance authority of the State in which the person is domiciled, subject to section 6701 of this title.

   (7) Under the Federal Trade Commission Act [15 U.S.C. 41 et seq.], by the Federal Trade Commission for any other financial institution or other person that is not subject to the jurisdiction of any agency or authority under paragraphs (1) through (6) of this subsection.

   (8) Under subtitle E of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5561 et seq.], by the Bureau of Consumer Financial Protection, in the case of any financial institution and other covered person or service provider that is subject to the jurisdiction of the Bureau and any person subject to this subchapter, but not with respect to the standards under section 6801 of this title.

## (b) Enforcement of section 6801

### (1) In general

Except as provided in paragraph (2), the agencies and authorities described in subsection (a), other than the Bureau of Consumer Financial Protection, shall implement the standards prescribed under section 6801(b) of this title in the same manner, to the extent practicable, as standards prescribed pursuant to section 1831p–1(a) of title 12 are implemented pursuant to such section.

### (2) Exception

The agencies and authorities described in paragraphs (3), (4), (5), (6), and (7) of subsection (a) shall implement the standards prescribed under section 6801(b) of this title by rule with respect to the financial institutions and other persons subject to their respective jurisdictions under subsection (a).

## (c) Absence of State action

If a State insurance authority fails to adopt regulations to carry out this subchapter, such State shall not be eligible to override, pursuant to section 1831x(g)(2)(B)(iii) of title 12, the insurance customer protection regulations prescribed by a Federal banking agency under section 1831x(a) of title 12.

## (d) Definitions

The terms used in subsection (a)(1) that are not defined in this subchapter or otherwise defined in section 1813(s) of title 12 shall have the same meaning as given in section 3101 of title 12.

(Pub. L. 106–102, title V, §505, Nov. 12, 1999, 113 Stat. 1440; Pub. L. 111–203, title X, §1093(4), (5), July 21, 2010, 124 Stat. 2096, 2097.)

### EDITORIAL NOTES

### REFERENCES IN TEXT

The Consumer Financial Protection Act of 2010, referred to in subsec. (a), is title X of Pub. L. 111–203, July 21, 2010, 124 Stat. 1955. Subtitles B (§§1021–1029A) and E (§§1051–1058) of the Act are classified generally to parts B (§5511 et seq.) and E (§5561 et seq.), respectively, of subchapter V of chapter 53 of Title 12, Banks and Banking. For complete classification of subtitles B and E to the Code, see Tables.

This subchapter, referred to in subsecs. (a), (c), and (d), was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

Section 25 of the Federal Reserve Act, referred to in subsec. (a)(1)(B), is classified to subchapter I (§601 et seq.) of chapter 6 of Title 12, Banks and Banking. Section 25A of the Federal Reserve Act is classified to subchapter II (§611 et seq.) of chapter 6 of Title 12.

The Federal Credit Union Act, referred to in subsec. (a)(2), is act June 26, 1934, ch. 750, 48 Stat. 1216, which is classified generally to chapter 14 (§1751 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see section 1751 of Title 12 and Tables.

The Securities Exchange Act of 1934, referred to in subsec. (a)(3), is act June 6, 1934, ch. 404, 48 Stat. 881, which is classified principally to chapter 2B (§78a et seq.) of this title. For complete classification of this Act to the Code, see section 78a of this title and Tables.

The Investment Company Act of 1940, referred to in subsec. (a)(4), is title I of act Aug. 22, 1940, ch. 686, 54 Stat. 789, which is classified generally to subchapter I (§80a–1 et seq.) of chapter 2D of this title. For complete classification of this Act to the Code, see section 80a–51 of this title and Tables.

The Investment Advisers Act of 1940, referred to in subsec. (a)(5), is title II of act Aug. 22, 1940, ch. 686, 54 Stat. 847, which is classified generally to subchapter II (§80b–1 et seq.) of chapter 2D of this title. For complete classification of this Act to the Code, see section 80b–20 of this title and Tables.

The Federal Trade Commission Act, referred to in subsec. (a)(7), is act Sept. 26, 1914, ch. 311, 38 Stat. 717, which is classified generally to subchapter I (§41 et seq.) of chapter 2 of this title. For complete classification of this Act to the Code, see section 58 of this title and Tables.

### AMENDMENTS

**2010**—Subsec. (a). Pub. L. 111–203, §1093(4)(A), substituted "Subject to subtitle B of the Consumer Financial Protection Act of 2010, this subchapter and the regulations prescribed thereunder shall be enforced by the Bureau of Consumer Financial Protection, the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law, as follows:" for "This subchapter and the regulations prescribed thereunder shall be enforced by the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law, as follows:".

Subsec. (a)(1). Pub. L. 111–203, §1093(4)(B)(i), inserted "by the appropriate Federal banking agency, as defined in section 1813(q) of title 12," before "in the case of—".

Subsec. (a)(1)(A). Pub. L. 111–203, §1093(4)(B)(ii), struck out ", by the Office of the Comptroller of the Currency" before semicolon at end.

Subsec. (a)(1)(B). Pub. L. 111–203, §1093(4)(B)(iii), struck out ", by the Board of Governors of the Federal Reserve System" before semicolon at end.

Subsec. (a)(1)(C). Pub. L. 111–203, §1093(4)(B)(iv), struck out ", by the Board of Directors of the Federal Deposit Insurance Corporation" before "; and".

Subsec. (a)(1)(D). Pub. L. 111–203, §1093(4)(B)(v), struck out ", by the Director of the Office of Thrift Supervision" before period at end.

Subsec. (a)(8). Pub. L. 111–203, §1093(4)(C), added par. (8).

Subsec. (b)(1). Pub. L. 111–203, §1093(5), inserted ", other than the Bureau of Consumer Financial Protection," before "shall implement the standards".

### STATUTORY NOTES AND RELATED SUBSIDIARIES

### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

## §6806. Relation to other provisions

Except for the amendments made by subsections (a) and (b), nothing in this chapter shall be construed to modify, limit, or supersede the operation of the Fair Credit Reporting Act [15 U.S.C. 1681 et seq.], and no inference shall be drawn on the basis of the provisions of this chapter regarding whether information is transaction or experience information under section 603 of such Act [15 U.S.C. 1681a].

(Pub. L. 106–102, title V, §506(c), Nov. 12, 1999, 113 Stat. 1442.)

### EDITORIAL NOTES

### REFERENCES IN TEXT

Amendments made by subsections (a) and (b), referred to in text, means amendments made by section 506(a) and (b) of Pub. L. 106–102, which amended section 1681s of this title.

This chapter, referred to in text, was in the original "this title", meaning title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which enacted this chapter and amended section 1681s of this title. For complete classification of title V to the Code, see Tables.

The Fair Credit Reporting Act, referred to in text, is title VI of Pub. L. 90–321, as added by Pub. L. 91–508, title VI, §601, Oct. 26, 1970, 84 Stat. 1127, which is classified generally to subchapter III (§1681 et seq.) of chapter 41 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of this title and Tables.

## §6807. Relation to State laws

**(a) In general**

This subchapter and the amendments made by this subchapter shall not be construed as superseding, altering, or affecting any statute, regulation, order, or interpretation in effect in any State, except to the extent that such statute, regulation, order, or interpretation is inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency.

**(b) Greater protection under State law**

For purposes of this section, a State statute, regulation, order, or interpretation is not inconsistent with the provisions of this subchapter if the protection such statute, regulation, order, or interpretation affords any person is greater than the protection provided under this subchapter and the amendments made by this subchapter, as determined by the Bureau of Consumer Financial Protection, after consultation with the agency or authority with jurisdiction under section 6805(a) of this title of either the person that initiated the complaint or that is the subject of the complaint, on its own motion or upon the petition of any interested party.

(Pub. L. 106–102, title V, §507, Nov. 12, 1999, 113 Stat. 1442; Pub. L. 111–203, title X, §1093(6), July 21, 2010, 124 Stat. 2097.)

### EDITORIAL NOTES

#### REFERENCES IN TEXT

This subchapter, referred to in text, was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

#### AMENDMENTS

**2010**—Subsec. (b). Pub. L. 111–203 substituted "Bureau of Consumer Financial Protection" for "Federal Trade Commission".

### STATUTORY NOTES AND RELATED SUBSIDIARIES

#### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

## §6808. Study of information sharing among financial affiliates

**(a) In general**

The Secretary of the Treasury, in conjunction with the Federal functional regulators and the Federal Trade Commission, shall conduct a study of information sharing practices among financial institutions and their affiliates. Such study shall include—

(1) the purposes for the sharing of confidential customer information with affiliates or with nonaffiliated third parties;

(2) the extent and adequacy of security protections for such information;

(3) the potential risks for customer privacy of such sharing of information;

(4) the potential benefits for financial institutions and affiliates of such sharing of information;

(5) the potential benefits for customers of such sharing of information;

(6) the adequacy of existing laws to protect customer privacy;

(7) the adequacy of financial institution privacy policy and privacy rights disclosure under existing law;

(8) the feasibility of different approaches, including opt-out and opt-in, to permit customers to direct that confidential information not be shared with affiliates and nonaffiliated third parties; and

(9) the feasibility of restricting sharing of information for specific uses or of permitting customers to direct the uses for which information may be shared.

### (b) Consultation

The Secretary shall consult with representatives of State insurance authorities designated by the National Association of Insurance Commissioners, and also with financial services industry, consumer organizations and privacy groups, and other representatives of the general public, in formulating and conducting the study required by subsection (a).

### (c) Report

On or before January 1, 2002, the Secretary shall submit a report to the Congress containing the findings and conclusions of the study required under subsection (a), together with such recommendations for legislative or administrative action as may be appropriate.

(Pub. L. 106–102, title V, §508, Nov. 12, 1999, 113 Stat. 1442.)


## §6809. Definitions

As used in this subchapter:

### (1) Federal banking agency

The term "Federal banking agency" has the same meaning as given in section 1813 of title 12.

### (2) Federal functional regulator

The term "Federal functional regulator" means—
   (A) the Board of Governors of the Federal Reserve System;
   (B) the Office of the Comptroller of the Currency;
   (C) the Board of Directors of the Federal Deposit Insurance Corporation;
   (D) the Director of the Office of Thrift Supervision;
   (E) the National Credit Union Administration Board; and
   (F) the Securities and Exchange Commission.

### (3) Financial institution

#### (A) In general

The term "financial institution" means any institution the business of which is engaging in financial activities as described in section 1843(k) of title 12.

#### (B) Persons subject to CFTC regulation

Notwithstanding subparagraph (A), the term "financial institution" does not include any person or entity with respect to any financial activity that is subject to the jurisdiction of the Commodity Futures Trading Commission under the Commodity Exchange Act [7 U.S.C. 1 et seq.].

#### (C) Farm credit institutions

Notwithstanding subparagraph (A), the term "financial institution" does not include the Federal Agricultural Mortgage Corporation or any entity chartered and operating under the Farm Credit Act of 1971 [12 U.S.C. 2001 et seq.].

#### (D) Other secondary market institutions

Notwithstanding subparagraph (A), the term "financial institution" does not include institutions chartered by Congress specifically to engage in transactions described in section 6802(e)(1)(C) of this title, as long as such institutions do not sell or transfer nonpublic personal information to a nonaffiliated third party.

### (4) Nonpublic personal information

(A) The term "nonpublic personal information" means personally identifiable financial information—
   (i) provided by a consumer to a financial institution;
   (ii) resulting from any transaction with the consumer or any service performed for the consumer; or
   (iii) otherwise obtained by the financial institution.

(B) Such term does not include publicly available information, as such term is defined by the regulations prescribed under section 6804 of this title.
(C) Notwithstanding subparagraph (B), such term—
   (i) shall include any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any nonpublic personal information other than publicly available information; but
   (ii) shall not include any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived without using any nonpublic personal information.

**(5) Nonaffiliated third party**

The term "nonaffiliated third party" means any entity that is not an affiliate of, or related by common ownership or affiliated by corporate control with, the financial institution, but does not include a joint employee of such institution.

**(6) Affiliate**

The term "affiliate" means any company that controls, is controlled by, or is under common control with another company.

**(7) Necessary to effect, administer, or enforce**

The term "as necessary to effect, administer, or enforce the transaction" means—

(A) the disclosure is required, or is a usual, appropriate, or acceptable method, to carry out the transaction or the product or service business of which the transaction is a part, and record or service or maintain the consumer's account in the ordinary course of providing the financial service or financial product, or to administer or service benefits or claims relating to the transaction or the product or service business of which it is a part, and includes—

(i) providing the consumer or the consumer's agent or broker with a confirmation, statement, or other record of the transaction, or information on the status or value of the financial service or financial product; and

(ii) the accrual or recognition of incentives or bonuses associated with the transaction that are provided by the financial institution or any other party;

(B) the disclosure is required, or is one of the lawful or appropriate methods, to enforce the rights of the financial institution or of other persons engaged in carrying out the financial transaction, or providing the product or service;

(C) the disclosure is required, or is a usual, appropriate, or acceptable method, for insurance underwriting at the consumer's request or for reinsurance purposes, or for any of the following purposes as they relate to a consumer's insurance: Account administration, reporting, investigating, or preventing fraud or material misrepresentation, processing premium payments, processing insurance claims, administering insurance benefits (including utilization review activities), participating in research projects, or as otherwise required or specifically permitted by Federal or State law; or

(D) the disclosure is required, or is a usual, appropriate or acceptable method, in connection with—

(i) the authorization, settlement, billing, processing, clearing, transferring, reconciling, or collection of amounts charged, debited, or otherwise paid using a debit, credit or other payment card, check, or account number, or by other payment means;

(ii) the transfer of receivables, accounts or interests therein; or

(iii) the audit of debit, credit or other payment information.

**(8) State insurance authority**

The term "State insurance authority" means, in the case of any person engaged in providing insurance, the State insurance authority of the State in which the person is domiciled.

**(9) Consumer**

The term "consumer" means an individual who obtains, from a financial institution, financial products or services which are to be used primarily for personal, family, or household purposes, and also means the legal representative of such an individual.

**(10) Joint agreement**

The term "joint agreement" means a formal written contract pursuant to which two or more financial institutions jointly offer, endorse, or sponsor a financial product or service, and as may be further defined in the regulations prescribed under section 6804 of this title.

**(11) Customer relationship**

The term "time of establishing a customer relationship" shall be defined by the regulations prescribed under section 6804 of this title, and shall, in the case of a financial institution engaged in extending credit directly to consumers to finance purchases of goods or services, mean the time of establishing the credit relationship with the consumer.

(Pub. L. 106–102, title V, §509, Nov. 12, 1999, 113 Stat. 1443.)

### EDITORIAL NOTES

### REFERENCES IN TEXT

This subchapter, referred to in text, was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

The Commodity Exchange Act, referred to in par. (3)(B), is act Sept. 21, 1922, ch. 369, 42 Stat. 998, which is classified generally to chapter 1 (§1 et seq.) of Title 7, Agriculture. For complete classification of this Act to the Code, see section 1 of Title 7 and Tables.

The Farm Credit Act of 1971, referred to in par. (3)(C), is Pub. L. 92–181, Dec. 10, 1971, 85 Stat. 583, which is classified generally to chapter 23 (§2001 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see Short Title note set out under section 2001 of Title 12 and Tables.

### SUBCHAPTER II—FRAUDULENT ACCESS TO FINANCIAL INFORMATION

## §6821. Privacy protection for customer information of financial institutions

**(a) Prohibition on obtaining customer information by false pretenses**

It shall be a violation of this subchapter for any person to obtain or attempt to obtain, or cause to be disclosed or attempt to cause to be disclosed to any person, customer information of a financial institution relating to another person—

(1) by making a false, fictitious, or fraudulent statement or representation to an officer, employee, or agent of a financial institution;

(2) by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution; or

(3) by providing any document to an officer, employee, or agent of a financial institution, knowing that the document is forged, counterfeit, lost, or stolen, was fraudulently obtained, or contains a false, fictitious, or fraudulent statement or representation.

**(b) Prohibition on solicitation of a person to obtain customer information from financial institution under false pretenses**

It shall be a violation of this subchapter to request a person to obtain customer information of a financial institution, knowing that the person will obtain, or attempt to obtain, the information from the institution in any manner described in subsection (a).

**(c) Nonapplicability to law enforcement agencies**

No provision of this section shall be construed so as to prevent any action by a law enforcement agency, or any officer, employee, or agent of such agency, to obtain customer information of a financial institution in connection with the performance of the official duties of the agency.

**(d) Nonapplicability to financial institutions in certain cases**

No provision of this section shall be construed so as to prevent any financial institution, or any officer, employee, or agent of a financial institution, from obtaining customer information of such financial institution in the course of—

(1) testing the security procedures or systems of such institution for maintaining the confidentiality of customer information;

(2) investigating allegations of misconduct or negligence on the part of any officer, employee, or agent of the financial institution; or

(3) recovering customer information of the financial institution which was obtained or received by another person in any manner described in subsection (a) or (b).

**(e) Nonapplicability to insurance institutions for investigation of insurance fraud**

No provision of this section shall be construed so as to prevent any insurance institution, or any officer, employee, or agency of an insurance institution, from obtaining information as part of an insurance investigation into criminal activity, fraud, material misrepresentation, or material nondisclosure that is authorized for such institution under State law, regulation, interpretation, or order.

**(f) Nonapplicability to certain types of customer information of financial institutions**

No provision of this section shall be construed so as to prevent any person from obtaining customer information of a financial institution that otherwise is available as a public record filed pursuant to the securities laws (as defined in section 78c(a)(47) of this title).

**(g) Nonapplicability to collection of child support judgments**

No provision of this section shall be construed to prevent any State-licensed private investigator, or any officer, employee, or agent of such private investigator, from obtaining customer information of a financial institution, to the extent reasonably necessary to collect child support from a person adjudged to have been delinquent in his or her obligations by a Federal or State court, and to the extent that such action by a State-licensed private investigator is not unlawful under any other Federal or State law or regulation, and has been authorized by an order or judgment of a court of competent jurisdiction.

(Pub. L. 106–102, title V, §521, Nov. 12, 1999, 113 Stat. 1446.)

## §6822. Administrative enforcement

**(a) Enforcement by Federal Trade Commission**

Except as provided in subsection (b), compliance with this subchapter shall be enforced by the Federal Trade Commission in the same manner and with the same power and authority as the Commission has under the Fair Debt Collection Practices Act [15 U.S.C. 1692 et seq.] to enforce compliance with such Act.

**(b) Enforcement by other agencies in certain cases**

**(1) In general**

Compliance with this subchapter shall be enforced under—

(A) section 8 of the Federal Deposit Insurance Act [12 U.S.C. 1818], in the case of—

(i) national banks, and Federal branches and Federal agencies of foreign banks, by the Office of the Comptroller of the Currency;

(ii) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act [12 U.S.C. 601 et seq., 611 et seq.], by the Board;

(iii) banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System and national nonmember banks) and insured State branches of foreign banks, by the Board of Directors of the Federal Deposit Insurance Corporation; and

(iv) savings associations the deposits of which are insured by the Federal Deposit Insurance Corporation, by the Director of the Office of Thrift Supervision; and

(B) the Federal Credit Union Act [12 U.S.C. 1751 et seq.], by the Administrator of the National Credit Union Administration with respect to any Federal credit union.

**(2) Violations of this subchapter treated as violations of other laws**

For the purpose of the exercise by any agency referred to in paragraph (1) of its powers under any Act referred to in that paragraph, a violation of this subchapter shall be deemed to be a violation of a requirement imposed under that Act. In addition to its powers under any provision of law specifically referred to in paragraph (1), each of the agencies referred to in that paragraph may exercise, for the purpose of enforcing compliance with this subchapter, any other authority conferred on such agency by law.

(Pub. L. 106–102, title V, §522, Nov. 12, 1999, 113 Stat. 1447.)

### EDITORIAL NOTES

### REFERENCES IN TEXT

The Fair Debt Collection Practices Act, referred to in subsec. (a), is title VIII of Pub. L. 90–321, as added by Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 874, which is classified generally to subchapter V (§1692 et seq.) of chapter 41 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of this title and Tables.

Section 25 of the Federal Reserve Act, referred to in subsec. (b)(1)(A)(ii), is classified to subchapter I (§601 et seq.) of chapter 6 of Title 12, Banks and Banking. Section 25A of the Federal Reserve Act is classified to subchapter II (§611 et seq.) of chapter 6 of Title 12.

The Federal Credit Union Act, referred to in subsec. (b)(1)(B), is act June 26, 1934, ch. 750, 48 Stat. 1216, which is classified generally to chapter 14 (§1751 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see section 1751 of Title 12 and Tables.

### STATUTORY NOTES AND RELATED SUBSIDIARIES

### TRANSFER OF FUNCTIONS

Functions vested in Administrator of National Credit Union Administration transferred and vested in National Credit Union Administration Board pursuant to section 1752a of Title 12, Banks and Banking.

## §6823. Criminal penalty

**(a) In general**

Whoever knowingly and intentionally violates, or knowingly and intentionally attempts to violate, section 6821 of this title shall be fined in accordance with title 18 or imprisoned for not more than 5 years, or both.

**(b) Enhanced penalty for aggravated cases**

Whoever violates, or attempts to violate, section 6821 of this title while violating another law of the United States or as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period shall be fined twice the amount provided in subsection (b)(3) or (c)(3) (as the case may be) of section 3571 of title 18, imprisoned for not more than 10 years, or both.

(Pub. L. 106–102, title V, §523, Nov. 12, 1999, 113 Stat. 1448.)

## §6824. Relation to State laws

### (a) In general

This subchapter shall not be construed as superseding, altering, or affecting the statutes, regulations, orders, or interpretations in effect in any State, except to the extent that such statutes, regulations, orders, or interpretations are inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency.

### (b) Greater protection under State law

For purposes of this section, a State statute, regulation, order, or interpretation is not inconsistent with the provisions of this subchapter if the protection such statute, regulation, order, or interpretation affords any person is greater than the protection provided under this subchapter as determined by the Federal Trade Commission, after consultation with the agency or authority with jurisdiction under section 6822 of this title of either the person that initiated the complaint or that is the subject of the complaint, on its own motion or upon the petition of any interested party.

(Pub. L. 106–102, title V, §524, Nov. 12, 1999, 113 Stat. 1448.)

## §6825. Agency guidance

In furtherance of the objectives of this subchapter, each Federal banking agency (as defined in section 1813(z) of title 12), the National Credit Union Administration, and the Securities and Exchange Commission or self-regulatory organizations, as appropriate, shall review regulations and guidelines applicable to financial institutions under their respective jurisdictions and shall prescribe such revisions to such regulations and guidelines as may be necessary to ensure that such financial institutions have policies, procedures, and controls in place to prevent the unauthorized disclosure of customer financial information and to deter and detect activities proscribed under section 6821 of this title.

(Pub. L. 106–102, title V, §525, Nov. 12, 1999, 113 Stat. 1448.)

## §6826. Reports

### (a) Report to the Congress

Before the end of the 18-month period beginning on November 12, 1999, the Comptroller General, in consultation with the Federal Trade Commission, Federal banking agencies, the National Credit Union Administration, the Securities and Exchange Commission, appropriate Federal law enforcement agencies, and appropriate State insurance regulators, shall submit to the Congress a report on the following:

(1) The efficacy and adequacy of the remedies provided in this subchapter in addressing attempts to obtain financial information by fraudulent means or by false pretenses.

(2) Any recommendations for additional legislative or regulatory action to address threats to the privacy of financial information created by attempts to obtain information by fraudulent means or false pretenses.

### (b) Annual report by administering agencies

The Federal Trade Commission and the Attorney General shall submit to Congress an annual report on number and disposition of all enforcement actions taken pursuant to this subchapter.

(Pub. L. 106–102, title V, §526, Nov. 12, 1999, 113 Stat. 1448.)

## §6827. Definitions

For purposes of this subchapter, the following definitions shall apply:

### (1) Customer

The term "customer" means, with respect to a financial institution, any person (or authorized representative of a person) to whom the financial institution provides a product or service, including that of acting as a fiduciary.

### (2) Customer information of a financial institution

The term "customer information of a financial institution" means any information maintained by or for a financial institution which is derived from the relationship between the financial institution and a customer of the financial institution and is identified with the customer.

**(3) Document**

The term "document" means any information in any form.

**(4) Financial institution**

**(A) In general**

The term "financial institution" means any institution engaged in the business of providing financial services to customers who maintain a credit, deposit, trust, or other financial account or relationship with the institution.

**(B) Certain financial institutions specifically included**

The term "financial institution" includes any depository institution (as defined in section 461(b)(1)(A) of title 12), any broker or dealer, any investment adviser or investment company, any insurance company, any loan or finance company, any credit card issuer or operator of a credit card system, and any consumer reporting agency that compiles and maintains files on consumers on a nationwide basis (as defined in section 1681a(p) of this title).

**(C) Securities institutions**

For purposes of subparagraph (B)—

(i) the terms "broker" and "dealer" have the same meanings as given in section 78c of this title;

(ii) the term "investment adviser" has the same meaning as given in section 80b–2(a)(11) of this title; and

(iii) the term "investment company" has the same meaning as given in section 80a–3 of this title.

**(D) Certain persons and entities specifically excluded**

The term "financial institution" does not include any person or entity with respect to any financial activity that is subject to the jurisdiction of the Commodity Futures Trading Commission under the Commodity Exchange Act [7 U.S.C. 1 et seq.] and does not include the Federal Agricultural Mortgage Corporation or any entity chartered and operating under the Farm Credit Act of 1971 [12 U.S.C. 2001 et seq.].

**(E) Further definition by regulation**

The Federal Trade Commission, after consultation with Federal banking agencies and the Securities and Exchange Commission, may prescribe regulations clarifying or describing the types of institutions which shall be treated as financial institutions for purposes of this subchapter.

(Pub. L. 106–102, title V, §527, Nov. 12, 1999, 113 Stat. 1449.)

## Editorial Notes

## References in Text

The Commodity Exchange Act, referred to in par. (4)(D), is act Sept. 21, 1922, ch. 369, 42 Stat. 998, which is classified generally to chapter 1 (§1 et seq.) of Title 7, Agriculture. For complete classification of this Act to the Code, see section 1 of Title 7 and Tables.

The Farm Credit Act of 1971, referred to in par. (4)(D), is Pub. L. 92–181, Dec. 10, 1971, 85 Stat. 583, which is classified generally to chapter 23 (§2001 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see Short Title note set out under section 2001 of Title 12 and Tables.